```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

Wilbur Mazyck,

                Plaintiff,           08-CV-548 (CPS)(SMG)

    - against -                      MEMORANDUM
                                     OPINION
Ondre Johnson, Dennis Berrios,       AND ORDER
Raymond Kelly, individually and in
his capacity as Commissioner of the
New York City Police Department, The
New York City Police Department
("NYPD"), the City of New York,
Catherine Scroop, individually and
in her capacity as Assistant District
Attorney of King's County, Charles
Hynes, individually and in his
capacity as District Attorney of
King's Count, Martin Horn,
individually and in his capacity as
the Commissioner of the New York
City Department of Corrections, Alan
Vegersky, individually and in his
capacity as Assistant Commissioner
of the New York City Department of
Corrections, and the New York City
Department of Corrections,

                Defendants.

----------------------------------X
SIFTON, Senior Judge.
```

Plaintiff Wilbur Mazyck ("Mazyck") commenced this action against Ondre Johnson, individually and in his capacity as a detective or officer of the New York City Police Department ("Johnson"), Dennis Berrios, individually and in his official capacity as a detective or officer ("Berrios") (collectively,

"defendants"), and several other defendants on February 8, 2008.[1] Only Johnson and Berrios remain in the case.[2] Mazyck alleged the following claims for relief against Johnson and Berrios: (1) false arrest in violation of the Fourth Amendment and Fourteenth Amendment; (2) malicious prosecution in violation of the Fourth Amendment and the Fourteenth Amendment; and (3) conspiracy to violate plaintiff's constitutional rights against unreasonable searches, seizure, and detention, in violation of the Fourth Amendment. Only the malicious prosecution claim remains.[3] Plaintiff seeks compensatory, special, and punitive damages, attorneys' fees, and costs. On July 21, 2009, I denied a motion by defendants Berrios and Johnson for summary judgment from the bench. Now before the Court is a motion for reconsideration by defendants. For the reasons stated below, the motion for reconsideration is granted, and, upon reconsideration, summary

---

[1] The other defendants listed in the complaint were: Raymond Kelly, individually and in his capacity as Commissioner of the New York City Police Department, The New York City Police Department ("NYPD"), the City of New York, Catherine Scroop, individually and in her capacity as Assistant District Attorney of King's County, Charles Hynes, individually and in his capacity as District Attorney of King's Count, Martin Horn, individually and in his capacity as the Commissioner of the New York City Department of Corrections, Alan Vegersky, individually and in his capacity as Assistant Commissioner of the New York City Department of Corrections, and the New York City Department of Corrections.

[2] By Stipulation and Order signed on April 7, 2009, plaintiff voluntarily dismissed defendants City of New York, New York City Police Department, New York City Department of Correction, Raymond Kelly, Charles Hynes, Martin Horn, Alan Vengersky, and Catherine Scroop from the case.

[3] By a Stipulation and Order signed on April 7, 2009, plaintiff voluntarily dismissed all claims against Berrios and Johnson except for one claim of malicious prosecution.

judgment is again denied.

**BACKGROUND**

The following facts are taken from the parties' submissions in connection with the motion for summary judgment. Disputes are noted.

This case arises from an incident in which plaintiff was arrested and charged with criminal possession of a weapon in the fourth degree. Following his arrest, plaintiff was fired from his job at the New York City Department of Correction ("DOC"). Plaintiff alleges that defendants maliciously prosecuted him. Defendants respond that plaintiff was appropriately arrested and prosecuted for carrying an unregistered and unlicensed weapon. A more detailed account of events follows.

On October 8, 2003, plaintiff received a call from the King's County Hospital regarding difficulties the Hospital was having in admitting his brother.[4] Deposition of Wilbur Mazyck, taken January 22, 2009, at 56-57. Plaintiff left home with a .38 caliber firearm, his DOC shield, and his DOC identification card. *Id*. at 58-59. He placed the gun in a holster that he wore on his back. *Id*. at 60. Plaintiff's girlfriend Shameeka Aiken ("Aiken") and her child were in the vehicle with plaintiff. *Id*. at 61. On

---

[4]Plaintiff's brother receives disability benefits and requires living assistance.

the way home from the hospital, while plaintiff was driving on Bushwick Avenue in Brooklyn, two adolescents slapped his car as he drove through an intersection. *Id*. at 65, 74. Plaintiff stopped his car to confront the adolescents, who ran down the sidewalk. *Id*. at 72. As plaintiff stepped out of his car, he dropped his cell phone on the ground, which he bent down to pick up. *Id*. at 72, 75. One of the adolescents yelled "he has a gun," after which officers Johnson and Barrios, members of the North Brooklyn Gang Unit, exited an unmarked police vehicle across the street and approached plaintiff. *Id*. at 77. Johnson stopped plaintiff in the street, frisked him, handcuffed him, and placed him in a police car. *Id*. at 85-86. Plaintiff told Johnson that he was a corrections officer and that his shield and identification were in the glove compartment of his car. *Id*. at 87, 93-94. The officers drove the police car and plaintiff's car around the corner. *Id*. at 86. The officers asked plaintiff if he was carrying a weapon; plaintiff said yes, and handed it to Johnson.[5] *Id*. at 88, 90. Johnson reviewed plaintiff's identification and noted that it read "No Firearm" on it. Deposition of Ondre Johnson taken March 18, 2009 at 16.

The officers transported plaintiff to the 81st Precinct

---

[5]Defendants concede this sequence of events. *See* Defendants' Statement of Material Facts at ¶¶ 17, 18 ("D. SMF"). However, at the suppression hearing held in Criminal Court following the arrest, Officer Johnson testified that Mazyck ran towards him, and when Johnson put his hand around Mazyck's waist to stop him, he felt a gun, after which Barrios handcuffed Mazyck. Stockman Decl. Ex. I at 2 (Decision granting motion to suppress).

where he was processed for carrying an illegal weapon. *Id*. at 97-98. DOC was notified of the arrest and a DOC representative came to the 81st precinct. *Id*. at 105-106. On October 9, Johnson transported plaintiff to Brooklyn Central Booking where he was arraigned. *Id*. at 108-9. Defendant Barrios signed the Criminal Complaint against plaintiff, in which Barrios attested that he "recovered a 38 caliber Smith and Wesson revolver from defendant's waistband." Stockman Decl. Ex. N. Plaintiff spent two days in jail following his arraignment. Mazyck Dep. at 111.

At the time of his arrest, plaintiff was not permitted to carry a firearm by DOC or any other authority. Mazyck Dep. at 94-95. The firearm was not registered. *Id*. at 195. Also at the time of his arrest, plaintiff was on probation with DOC. Stockman Decl. Ex. D. Plaintiff was suspended from employment from October 9, 2003, to October 24, 2003, after which he was permitted to return to work. Stockman Decl. Ex. H. DOC terminated plaintiff's employment on December 3, 2003. In its decision to terminate plaintiff's employment, DOC stated that plaintiff had been arrested for possession of a firearm that he did not have authorization to carry.[6]

---

[6]DOC further stated that the New York State Police and the Bureau of Alcohol, Tobacco, and Firearms records indicated that the last registered owner of the firearm was a person named Jae Lee, and that the firearm had last been registered in 1992. DOC noted that there was no documented relationship between Jae Lee and plaintiff. Plaintiff states that he lawfully purchased the weapon from a federally authorized weapons dealer, and has provided a receipt for the purchase. Mazyck Decl. Ex. D.

*Procedural History*

On September 27, 2004, Criminal Court Judge Lopez-Torres held a hearing to determine whether the firearm discovered on plaintiff's person should be suppressed. On January 21, 2005, Judge Lopez-Torres issued a written decision finding that the arrest was unlawful and granting the motion to suppress. Judge Lopez-Torres stated, "[a]s the officer acknowledged during his testimony, before he found the gun, Mr. Mazyck had not engaged in any illegal conduct and had not violated any law. Therefore, [arresting Mr. Mazyck] constituted an unreasonable search and seizure... in violation of his Fourth Amendment [rights]." Stockman Decl, Ex. I, p. 3. On February 9, 2005, the case against plaintiff was dismissed on motion of the District Attorney's Office.

Plaintiff filed this action on February 8, 2008. Defendants moved for summary judgment, arguing that plaintiff had failed to establish the elements of his malicious prosecution claim, that plaintiff had suffered no injury as a result of the prosecution, and that defendants were entitled to qualified immunity. On July 21, 2009, I denied the motion from the bench, stating that there were material issues of fact as to the sequence of events that led to the arrest and whether plaintiff was arrested before the weapon was found. Defendants timely filed a motion seeking reconsideration of my ruling on the ground that plaintiff had

failed to establish the elements of his malicious prosecution claim.

**DISCUSSION**

**I.   Standard for Motion for Reconsideration**

Civil motions for reconsideration in this District are governed by Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3.[7] Reconsideration is appropriate in light of an intervening change of controlling law, the availability of new evidence, the need to correct a clear error, or to prevent manifest injustice. *See Doe v. New York City Dept. of Social Servs.*, 709 F.2d 782, 789 (2d Cir. 1983). Additionally, reconsideration is appropriate where a court misinterprets or misapplies relevant case law in its original decision. *See O'Brien v. Bd. of Educ. of Deer Park Union Free School Dist.*, 127 F. Supp. 2d 342, 346 (E.D.N.Y. 2001).

The standard for success on a motion for reconsideration "is

---

[7]Essentially the same standard is used to determine Rule 59(e) motions as motions under the Local Rule. Rule 59(e) "does not prescribe specific grounds for granting a motion to alter or amend an otherwise final judgment," *Munafo v. Metropolitan Transp. Authority*, 381 F.3d 99, 105 (2d Cir. 2004), and "district courts may alter or amend a judgment to correct a clear error of law or prevent manifest injustice." *Id.* (internal citations and quotations omitted); *see also Wood v. F.B.I.*, 432 F.3d 78, 85 n.4 (2d Cir. 2005) (affirming denial of Rule 59(e) motion where "district court did not commit error or a manifest injustice"). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or [factual] data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *Pereira v. Aetna Cas. and Sur. Co. (In re Payroll Express Corp.)*, 921 F.Supp. 1121, 1123 (S.D.N.Y. 1996); *Violette v. Armonk Assocs., L.P.*, 823 F. Supp. 224, 226 (S.D.N.Y. 1993). Local Rule 6.3 "is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court." *Ades v. Deloitte & Touche*, 843 F. Supp. 888, 890 (S.D.N.Y. 1994). A Local Rule 6.3 motion is not to be used as a substitute for appeal. *See Morser v. A.T. & T. Information Systems*, 715 F. Supp. 516, 517 (S.D.N.Y. 1989); *Korwek v. Hunt*, 649 F. Supp. 1547, 1548 (S.D.N.Y. 1986). In its motion for reconsideration, a party may not "advance new facts, issues, or arguments not previously presented to the Court." *National Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001) (quotation omitted). The decision to grant or deny a motion for reargument is within the sound discretion of the Court. *See Devlin v. Transp. Comm'ns Union*, 175 F.3d 121, 132 (2d Cir. 1999).

**II.    Malicious Prosecution**

The elements of a claim for malicious prosecution are: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Russel v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995). "Additionally, there must be a post-arraignment seizure for a § 1983 malicious prosecution claim; however, the requirements of attending criminal proceedings and obeying the conditions of bail suffice on that score." *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003).[8] On their motion for reconsideration, defendants do not dispute that defendants initiated a proceeding against plaintiff or that proceedings were terminated in plaintiff's favor. Instead, defendants argue that because plaintiff admitted that he was carrying an illegal weapon at the time of his arrest, there was probable cause for the arrest and the prosecution. Defendants further maintain that plaintiff has failed to make out the

---

[8]The deprivation of liberty that occurs pursuant to malicious prosecution is a violation of the Fourth Amendment, which protects against unreasonable seizures. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 114 (2d Cir. 1995) (a malicious prosecution claim may be asserted under the Fourth Amendment, but not the Fourteenth Amendment's substantive due process clause). Since the "gist of a claim for malicious prosecution is abuse of the judicial process, a plaintiff pursuing such a claim under § 1983 must show that the seizure resulted from the initiation or pendency of judicial proceedings." *Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir. 1997). Aside from the requirement of showing a post-arraignment seizure, "[t]he elements of false arrest and malicious prosecution under § 1983 are 'substantially the same' as the elements under New York law. Therefore, the analysis of the state and the federal claims is identical." *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003) (citing *Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992)).

element of malice against defendant Berrios.

**III.    Reconsideration**

Defendants argue that, in finding that plaintiff had established the element of lack of probable cause for the prosecution, I overlooked the controlling decision of *Townes v. City of New York*, 176 F.3d 138 (2d Cir. 1999). As further set forth below, I conclude that *Townes* does not require summary judgment to be granted in favor of defendants. Second, defendants argue that I overlooked the fact that plaintiff failed to establish the element of malice against Berrios, on the ground that Berrios did not lie in the criminal complaint he filed against plaintiff.

Because I did not address *Townes* or the issue of Barrios' complaint in my denial of the motion from the bench, despite the fact that defendants referenced these matters in their moving papers, I find that reconsideration is warranted.

**A. Probable Cause**

It is "well established that a finding of probable cause defeats a claim for malicious prosecution." *Martinez v. Golding*, 499 F. Supp. 2d 561, 569 (S.D.N.Y. 2007); *see also Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003). The probable cause at issue in a malicious prosecution claim is "probable cause to

believe that [plaintiff] could be successfully prosecuted." *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 417 (2d Cir. 1999). If a plaintiff can show that there is a material issue of fact as to the existence of probable cause to make an arrest, then a material issue of fact exists as to whether there was probable cause to believe a prosecution could succeed. *Id*. Conversely, if probable cause exists at the time of arrest, it is presumed to continue to the time of prosecution unless undermined by new exculpatory facts. *See Johnson v. Contantellis*, 221 Fed. Appx. 48, 50-51 (2d Cir. 2007).[9] If police officers discover incriminating evidence *after* making an arrest, such evidence "would clearly not be admissible and then there would be no probable cause to believe the prosecution could succeed." *Boyd v. City of New York*, 336 F.3d 72, 77 (2d Cir. 2003).

Defendants argue that probable cause existed to arrest plaintiff, because plaintiff told defendants that he possessed an illegal firearm "at the time of arrest," and there was no vitiation of probable cause between the arrest and prosecution. D. Mem. at 3. However, defendants gloss over the fact that the officers arrested plaintiff *before* finding that plaintiff was

---

[9]Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a reasonable person to believe that an offense has been committed by the person to be arrested. *See Dunaway v. New York*, 442 U.S. 200, 208 n.9, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979).

carrying a gun.[10] Defendants do not argue in their papers that there was any other ground for finding probable cause to arrest plaintiff. Accordingly, if defendants arrested plaintiff without probable cause, a reasonable juror could find that defendants did not have probable cause to believe that plaintiff could be successfully prosecuted. *See Boyd*, 336 F.3d at 77.

In their motion for reconsideration, defendants argue that the facts of this case are "identical" to those in *Townes v. City of New York*, in which police officers unlawfully searched a taxicab in which the plaintiff was riding and discovered illegal firearms in the taxicab. *See* 176 F.3d at 142. Townes' motion to suppress the firearms was denied, and he was incarcerated following a guilty plea. *Id*. On appeal, the indictment was dismissed upon a finding that the police lacked probable cause to stop and search the taxicab, and plaintiff subsequently sued the officers under § 1983 for violating his Fourth Amendment right against unlawful search and seizure, and sought to recover damages for his subsequent incarceration. *Id*. at 142, 145. Defendants point to the Court's discussion of why Townes could not recover for false arrest,[11] where the Court stated that

---

[10] Defendants concede this sequence of events in their Statement of Material Facts: "After plaintiff was handcuffed and placed in the police vehicle, plaintiff told the police he was carrying a firearm." P. SMF ¶ 18. Judge Lopez-Torres made this same finding in her decision granting the motion to suppress. Stockman Decl. Ex. I, p. 2-3.

[11] The Court emphasized that Towns made no argument that he was maliciously prosecuted. 176 F.3d at 149.

although the officers lacked probable cause to stop and search Townes, they had probable cause to arrest him upon discovery of the firearms, and the fact that the arrest was the product of an illegal search was not material, because "the fruit of the poisonous tree doctrine is not available to assist at § 1983 claimant." 176 F.3d at 149.

Defendants argue that, based on *Townes*, even if plaintiff's arrest were found to be without probable cause, the discovery of the gun created probable cause for the prosecution, regardless of the fact that the prosecution was the 'fruit' of the illegal arrest. Defendants misconstrue the probable cause standard at issue. As the Second Circuit made clear in *Boyd*, the question is not whether there exists probable cause to prosecute, but rather whether there is probable cause to *believe that a prosecution will succeed*. In this case, a reasonable jury could find that, because Berrios and Johnson knew that they lacked probable cause to arrest plaintiff, they had no probable cause to believe that the prosecution would succeed, given that the firearm would be suppressed.

**B. Malice**

Malice is a "wrong or improper motive, something other than a desire to see the ends of justice served." *Lowith v. Town of Tonawaga*, 82 F.3d 563, 573 (2d Cir. 1996). Once a court finds an

issue of material fact as to probable cause, "the element of malice also becomes an issue of material fact as well. A lack of probable cause generally creates an inference of malice." *Boyd*, 336 F.3d at 75 (citing *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997)). The inference of malice is supported in this case by the fact that Johnson testified at the suppression hearing that he and Berrios discovered that plaintiff was carrying a gun before they arrested him, a story that they have now admitted is false. Furthermore, plaintiff claims that Barrios and Johnson arrested him in order to satisfy a quota of arrests, rather than for any legitimate purpose, citing deposition testimony from Barrios and Johnson that the purpose of the North Brooklyn Gang Unit was enforcement and making arrests, Berrios Dep. at 8, and that the commanding officer would judge officers depending on how many arrests they made. Johnson Dep. at 50. A reasonable fact finder could conclude that Barrios and Johnson acted with malice.[12]

Defendants argue in their motion for reconsideration that even if plaintiff could establish that Johnson acted with malice,

---

[12]Plaintiff's complaint additionally alleges that defendants arrested him in order to cause him injury to his professional reputation and to cause severe emotional distress by arresting him in front of his pregnant girlfriend. Compl. ¶ 43. Plaintiff argues that Barrios and Johnson must have acted with malice towards him because he told them that he was a corrections officer and that he was on probation, which should have led them to understand that he could lose his job if arrested. Plaintiff adds nothing to this argument in his papers. Even if plaintiff could show that the officers knew he would lose his job if arrested, that would not establish that the officers had him arrested *in order that* he would lose his job. This argument lacks merit.

based on his false testimony at the suppression hearing, he cannot maintain a claim against Barrios, because Barrios's statement in the criminal complaint against plaintiff was factually true. However, Barrios' statement in the criminal complaint supports plaintiff's argument that Barrios acted with malice. Barrios stated in the complaint that he "recovered a... revolver from defendant's waistband." Stockman Decl. Ex. N. In fact, Berrios and Johnson first arrested plaintiff and then asked him whether he was carrying a weapon, after which plaintiff voluntarily handed his firearm to the officers, as defendants now concede. *See* D. SMF ¶ 18. Although slight, the discrepancy between Berrios's statement in the complaint and the true series of events is significant in that it was instrumental to the initiation of the prosecution: if Barrios had stated truthfully that, *after* the officers arrested plaintiff, they asked him if he was carrying a weapon and he voluntarily handed his gun to them, the prosecutor would not have pursued the case, it being evident that the gun would be suppressed as the product of an illegal arrest. A reasonable fact finder could conclude that Barrios and Johnson agreed to lie about the circumstances of the arrest, and that Barrios made the statement in the criminal complaint that would support the story told by Johnson at the suppression hearing: plaintiff ran towards the officers, and when Johnson put his hand around plaintiff's waist to stop him, he felt a gun,

after which Barrios handcuffed plaintiff. Stockman Decl. Ex. I at 2.

**CONCLUSION**

For the reasons stated herein, the motion for reconsideration is granted, and, upon reconsideration, the motion for summary judgment by defendants is again denied. The Clerk is directed to transmit a copy of the within to all parties and the assigned Magistrate Judge.

SO ORDERED.

Dated: Brooklyn, New York
August 22, 2009

By: /s/ Charles P. Sifton (electronically signed)
United States District Judge